**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ANN D. WESSBERG,

|  |  |
|---|---|
|  | Civil No. 22-94 (JRT/DLM) |

               Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA,

               Defendant.

**MEMORANDUM OPINION AND ORDER
ON BENEFITS OWED AND ATTORNEY'S
FEES AND COSTS**

---

Elizabeth S. Wright and Christopher M. Daniels, **PARKER DANIELS KIBORT LLC**, 123 North Third Street, Suite 888, Minneapolis, MN 55401; Michael J. Rothman, **ROTHMAN LLC**, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402, for Plaintiff.

Terrance J. Wagener and Molly Renee Hamilton Cawley, **MESSERLI KRAMER**, 100 South Fifth Street, Suite 1400, Minneapolis, MN 55402, for Defendant.

Plaintiff Ann D. Wessberg brought this action against Defendant Unum Life Insurance Company of America ("Unum") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, alleging that Unum improperly terminated her long-term disability benefits. After finding that Unum improperly terminated Wessberg's benefits, the Court granted Wessberg's and denied Unum's cross Motions for Judgment on the Administrative Record. The Court ordered the parties to meet and confer to discuss the amount of benefits owed, the reasonableness of attorney's fees and costs, and the proper calculation of prejudgment interest. The parties

disagree on the reasonableness of attorney's fees and costs.  For the reasons set forth below, the Court will order Unum to pay Wessberg retroactive benefits and prejudgment interest in the total amount of $741,085.31, attorney's fees in the amount of $314,440.29, and costs in the amount of $2,698.15.

## BACKGROUND

In July 2024, the Court concluded that Unum improperly terminated Wessberg's long-term disability benefits after she was diagnosed with bilateral invasive breast cancer. *Wessberg v. Unum Life Ins. Co. of Am.*, No. 22-94, 2024 WL 3444044, at *18 (D. Minn. July 15, 2024).  The Court ordered Unum to reinstate Wessberg's disability benefits, pay her benefits owed, and award her reasonable attorney's fees, costs, and prejudgment interest. *Id.* at *20.

The parties were unable to come to an agreement on the reasonableness of attorney's fees or costs.  Wessberg submitted a brief and several affidavits substantiating her request for attorney's fees and costs.  (Pl.'s Mem., Decl. of Ann Wessberg ("Wessberg Decl."), Decl. of Elizabeth S. Wright ("Wright Decl."), Decl. of Christopher M. Daniels ("Daniels Decl."), Decl. of Michael J. Rothman ("Rothman Decl."), Decl. of Katherine L. MacKinnon ("MacKinnon Decl."), Sept. 25, 2024, Docket Nos. 88–93.)  Wessberg's fees arise from three separate sets of invoices: one from Parker Daniels Kibort LLC ("PDK") for most of Wright's fees and all fees for Daniels and paralegals Siegel and Rice; one from Rothman LLC for Rothman's fees; and one from Wright for her fees incurred after May 3, 2024.  (Daniels Decl. ¶ 7 Ex. A; Rothman Decl. ¶ 43 Ex. B; Wright Decl. ¶ 13 Ex. 5.)

-2-

Unum opposes Wessberg's request for attorney's fees and costs. (Def.'s Mem. Opp'n Pet. for Att'ys Fees & Costs, Oct. 9, 2024, Docket No. 94; Decl. of Terrance J. Wagener ("Wagener Decl."), Oct. 9, 2024, Docket No. 95.)

## DISCUSSION

### I. BENEFITS OWED AND PREJUDGMENT INTEREST

The parties agree that Wessberg is owed retroactive benefits from September 8, 2020, to July 16, 2024, in the amount of $663,234.14, as well as prejudgment interest in the amount of $77,851.17. (Wright Decl. ¶ 6; Rothman Decl. ¶ 4.) Because the amount is undisputed, the Court will order Unum to pay Wessberg retroactive benefits in the amount of $663,234.14 and prejudgment interest in the amount of $77,851.17, for a total amount owed of $741,085.31.

### II. ATTORNEY'S FEES AND COSTS

The Court has ordered Unum to pay Wessberg reasonable attorney's fees and costs. *Wessberg*, 2024 WL 3444044, at *18–19. Wessberg requests $445,488.75 in attorney's fees and $9,797.09 in costs. Unum challenges the reasonableness of these requests on several grounds, arguing that the fee amount should be reduced to $93,603.59 and the costs to $430. The Court will analyze both requests in turn.

#### A. Attorney's Fees

A prevailing party seeking an award of attorney's fees must provide evidence to support the reasonableness of the fees, both as to the hourly rate claimed and the hours worked. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Hours that are "excessive,

redundant, or otherwise unnecessary" should be excluded.  *Id.* at 434; *see also Beckler v. Rent Recovery Sols., LLC*, 83 F.4th 693, 695 (8th Cir. 2023).  A district court has substantial discretion when determining the reasonableness of attorney's fees.  *Hensley*, 461 U.S. at 437; *Jarrett v. ERC Props., Inc.*, 211 F.3d 1078, 1084–85 (8th Cir. 2000).

In the Eighth Circuit, "courts typically use the 'lodestar' method for calculating a reasonable award."  *Paris Sch. Dist. v. Harter*, 894 F.3d 885, 889 (8th Cir. 2018).  To calculate the lodestar, courts multiply "the number of hours reasonably expended by the reasonable hourly rate."  *Beckler*, 83 F.4th at 695 (citation omitted).  The party seeking attorney's fees has the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended.  *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

Unum challenges Wessberg's request for attorney's fees on multiple grounds.  First, Unum argues that Wessberg's counsel's hourly rates are unreasonable.  Second, it urges the Court to exclude hours that were spent on unsuccessful motions and arguments.  Third, it argues that certain time entries are in block-billing format.  Fourth, it asks the Court to reduce the fee award for excessive billing.  Finally, it urges the Court to reduce hours that were billed for administrative and/or clerical tasks.  The Court will address each of these arguments individually.

### 1.     Reasonableness of Hourly Rates

First, the Court must consider whether the hourly rates charged by Wessberg's counsel, Elizabeth Wright, Michael Rothman, and Christopher Daniels, were reasonable. Wright's billing rate was initially $390 per hour.  (Wright Decl. ¶ 25.)  From May 3, 2024, onward, Wright's billing rate decreased to $200 per hour to reflect the fact that she had left her previous firm and had lower overhead costs.  (*Id.* ¶ 36.)  Rothman's hourly rate for this litigation was $510/585 in 2021, $630 in 2022 and 2023, and $675 in 2024. (Rothman Decl. ¶ 37.)  Daniels's hourly rate during this litigation was $475 per hour. (Daniels Decl. ¶ 17.)  Unum challenges all three attorney's hourly rates as unreasonable, asking the Court to apply a reduced rate to all three attorneys of $375 per hour.

In determining whether hourly rates are reasonable, the Eighth Circuit instructs courts to ensure that the requested rates are in line with those prevailing in the community for "similar services by lawyers of reasonably comparable skill, experience, and reputation."  *McDonald v. Armontrout*, 860 F.2d 1456, 1458–59 (8th Cir. 1988) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).  Courts give considerable attention to counsel's individual characteristics.  *Id.*  Specifically, "the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (citation omitted).  The Court will analyze the hourly rates claimed for Wright, Rothman, and Daniels in turn.

The Court finds that Wright's rate of $390 per hour is reasonable.  In recent history, the District of Minnesota has typically awarded attorney's fees ranging from $225 to $400

-

per hour for attorneys in ERISA cases.[1] Wright's rate at $390 per hour falls squarely within

that range. She has been practicing law since 1987 and has years of experience litigating

medical malpractice cases and pharmaceutical and medical device products liability

actions. (Wright Decl. ¶¶ 27–28.) She also has experience defending various issuers of

individual disability income insurance policies in denial and termination of disability

benefits cases at a large local firm. (*Id.* ¶ 29.) Though Wright has not cited decades of

experience litigating plaintiff-side ERISA cases specifically, the Court is satisfied that her

decades of litigation experiences have equipped her with the necessary medical and

insurance background and skills such that her hourly rate of $390 per hour is reasonable.

Indeed, a local attorney with nearly four decades of ERISA practice attests that her hourly

rate was $425 per hour in 2022 and 2023 and $450 per hour in 2024, such that, if anything,

Wright's hourly rate of $390 is "probably a bit low" given Wright's experience.

(MacKinnon Decl. ¶ 6; *see also* Wessberg Decl. ¶ 9 (declaring that Fredrikson's ERISA

litigator currently bills clients $535 per hour).) Given Wright's experience and what

appear to be the prevailing rates in this area, the Court finds that Wright's rate of $390

---

[1] *Werb v. ReliaStar Ins. Co.*, No. 13-669, 2014 WL 5431585, at *3 (D. Minn. Oct. 27, 2014) (finding that rates of $320 to $350 per hour were reasonable); *Johnson v. Charps Welding & Fabricating, Inc.*, No. 14-2081, 2018 WL 4829185, at *3 (D. Minn. Oct. 4, 2018) (finding that a rate of $225 per hour was reasonable); *Christoff v. Unum Life Ins. Co. of Am.*, No. 17-3512, 2019 WL 6715067, at *4 (D. Minn. Dec. 10, 2019) (finding that a rate of $320 per hour was reasonable); *Grandson v. W. Lake Superior Piping Indus. Pension Plan*, No. 23-214, 2025 WL 877589, at *8 (D. Minn. Mar. 21, 2025) (finding that rates of $350 to $400 per hour were reasonable).

per hour is reasonable.  The Court will apply this rate to Wright's hours expended before May 3, 2024 and a $200 hourly rate from May 3, 2024, onward.

Though Wright's claimed hourly rate is reasonable, the Court finds that Rothman's hourly rates are slightly elevated.  There is no doubt that Rothman is an experienced litigator well-versed in insurance litigation and ERISA matters.  He has been practicing since 1988 and has over 34 years of experience in insurance litigation, regulation, and industry practice, including ERISA litigation.  (Rothman Decl. ¶¶ 6–7, 17.)  He also has experience from serving as Commissioner of the Department of Commerce for the State of Minnesota for six years, where he oversaw the Minnesota Commerce Department and regulated insurance industries, among others.  (*Id.* ¶¶ 8–9.)  In addition, Rothman was nominated by President Barack Obama to serve on the Board of Directors of the National Association of Registered Agents and Brokers, which aimed to unify insurance agent and broker licensing in the United States.  (*Id.* ¶ 13.)  Despite Rothman's experience, however, the Court finds some of his hourly rates throughout this litigation—which were $510/585 in 2021, $630 in 2022 and 2023, and $675 in 2024—to be slightly elevated.  An hourly rate of $550 per hour is reasonable to reflect not only what appear to be the prevailing rates for attorneys litigating ERISA matters in this area but also Rothman's unique skillset and experience.  (*See* Wessberg Decl. ¶ 9.)  The Court will therefore apply an hourly rate of $550 to Rothman's hours that were billed at rates at and exceeding $585 per hour throughout this litigation.

-7-

Finally, the Court finds that Daniels's claimed rate of $475 per hour is reasonable. Daniels has been practicing law since 1988. (Daniels Decl. ¶ 12.) His decades of experience include handling complex commercial litigation, business and transactional litigation, intellectual property disputes, and medical malpractice insurance defense cases. (*Id.* ¶¶ 12–16.) Though Daniels did not specifically handle ERISA cases at the firms he formed in the late 90s and mid-aughts, he has handled numerous matters on behalf of or against insurance companies. (*Id.* ¶ 16.) Daniels attests that his billing rate is "imminently reasonable, and objectively on the low side when compared to attorneys with a similar background, training and experience to [his]." (*Id.* ¶ 17; *see also* Wessberg Decl. ¶ 9.) Given Daniels's experience and the prevailing rates in the area, the Court finds that Daniels's hourly rate of $475 is reasonable. The Court will apply this rate to Daniels's expended hours.

### 2. Reasonableness of Hours Expended

Having determined reasonable hourly rates for Wessberg's counsel, the Court must now consider if the hours expended were also reasonable. To determine whether the claimed hours were "reasonably expended," courts should "weigh the hours claimed against their own knowledge, experience, and expertise of the time required to complete similar activities." *Harter*, 894 F.3d at 889 (citation omitted). "The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1056 (8th Cir. 2025) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011) (cleaned up)).

Wessberg's counsel are claiming a total of approximately 1,068 hours litigating this matter.  Wright billed approximately 710 hours, Rothman billed approximately 227 hours, Daniels is claiming approximately 23 hours, and two PDK paralegals are claiming a combined total of about 108 hours.[2]  Unum challenges the reasonableness of the hours claimed in this matter under four categories: (1) unsuccessful motions and arguments, (2) block-billing, (3) excessive billing, and (4) administrative and/or clerical tasks.  The Court will address each individually.

### a.    Unsuccessful Motions and Arguments

Unum asks the Court to reduce the fee award based on the time associated with unsuccessful motions and arguments.  In particular, Unum requests reducing the hours expended by 215.8 hours to reflect the amount of time spent on unsuccessful motions and arguments, including the unsuccessful Motions to Expand the Administrative Record

---

[2] Unfortunately, Wessberg's counsel did not clearly specify how many hours were billed by each attorney and paralegal, leaving it up to the Court to make its own calculations based on the fee invoices attached to their declarations.  (*See* Daniels Decl. ¶ 7 Ex. A; Wright Decl. ¶ 13 Ex. 5; Rothman Decl. ¶ 43 Ex. B.)  Based on the Court's calculations, Wright billed 709.15 hours, Rothman billed 227.1 hours, Daniels is claiming 22.6 hours (16.4 hours that were billed and 6.2 hours that were unbilled but expended in September 2024), paralegal Siegel is claiming 81.85 hours (69.25 hours that were billed and 12.6 hours that were unbilled but expended in September 2024), and paralegal Rice billed 26.1 hours.  (*See* Daniels Decl. ¶¶ 9, 11.)  These calculations do not include the estimated 5 hours and 4 hours that paralegal Siegal and Daniels appear to also be claiming, respectively.  (*Id.* ¶¶ 9, 11.)  The Court's assessment leads it to believe that Rothman billed 5.6 hours at $510 per hour, 10.2 hours at $585 per hour, 146.3 hours at $630 per hour, and 65 hours at $675 per hour.  In the future, the Court urges counsel to submit affidavits that more clearly break down their billing practices.

and to Compel Discovery and an unsuccessful attempt to procure a bench trial as opposed to dispositive cross-motions for judgment on the administrative record.

"The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997). In cases where the plaintiff has lost some issues that are unrelated to those on which the plaintiff has won, the Court must treat the unrelated issues as if they were separate cases and cannot award fees based upon them. *Blackorby v. BNSF Ry. Co.*, 60 F.4th 415, 420 (8th Cir. 2023). However, claims that "involve a common core of facts or [are] based on related legal theories," deserve compensation even if they were not successful. *Hensley*, 461 U.S. at 435; *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001). Although fees may be reduced where a plaintiff has limited success, "[w]here a plaintiff has won substantial relief, . . . he 'should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.'" *Dasler v. E.F. Hutton*, 698 F. Supp. 172, 177 (D. Minn. 1988) (quoting *Hensley*, 461 U.S. at 440).

Wessberg's counsel achieved significant success on the merits of the case, as the Court ultimately concluded that Unum improperly terminated Wessberg's long-term disability benefits. Wessberg's unsuccessful Motions to Expand the Administrative Record and to Compel Discovery and unsuccessful attempt to procure a bench trial were not so unwarranted as to justify reducing the 215.8 hours spent on those arguments by 100%. However, the Court finds that spending so many hours on such issues was slightly

unreasonable, given that in de novo cases the scope of the Court's review is generally limited to the administrative record that was before the insurer. *Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir. 1993). The Court will apply a 50% reduction to these hours. Because the PDK firm billed 162.8 hours for these tasks, the Court will reduce these hours by half to 81.4 hours.[3] Because Rothman billed 53 hours for these tasks, the Court will reduce these hours by half, which will result in a reduction of $16,569 in Rothman's fees.[4]

### b.    Block-Billing

Unum asks the Court to impose a fifteen percent reduction of the requested fee award because at least thirty-five entries by Wessberg's counsel involve time periods in excess of four hours and are thus in block-billing format.

Block-billing is the lumping together of daily time entries consisting of two or more task descriptions. Though the Eighth Circuit does not expressly prohibit block-billing, *Nassar v. Jackson*, 779 F.3d 547, 554 (8th Cir. 2015), courts can reduce a fee award when block-billing is submitted, *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 651 (8th Cir. 2022). Block-billing is disfavored because it lacks specificity, but courts in this District have typically found block-billing to be "problematic only where the hours billed for multiple

---

[3] By the Court's calculations, this will reduce Wright's hours spent on this matter to 67.2, Daniels's hours to 1.15, and Paralegal Siegel's hours to 13.05.

[4] Unfortunately, it is difficult to ascertain which of Rothman's rates apply to which tasks in Unum's calculations regarding this matter. (*See* Wagener Decl. ¶ 10 Ex. B.) Assuming the total fees billed by Rothman for unsuccessful arguments and motions totals $33,138, the Court will reduce these fees by half.

tasks appear excessive, or where billed time needs to be eliminated for certain tasks."
*Zhulin v. I.Q. Data Int'l Inc.*, No. 23-2387, 2024 WL 4589879, at *4 (D. Minn. Oct. 28, 2024)
(quoting *Nathanson v. Diversified Adjustment Serv., Inc.*, No. 18-3102, 2019 WL 4387960,
at *5 (D. Minn. Sept. 13, 2019)); *see also Washington v. Denney*, No. 2:14-06118, 2017
WL 4399566, at *6 (W.D. Mo. Oct. 3, 2017).

After carefully reviewing the challenged time entries, the Court finds that a
reduction for block-billing is unwarranted. The Court has some concern that block-billing
may decrease accountability of attorneys in specifically recording their time expended,
and the Court would prefer that attorneys avoid the practice. But the billing records in
this litigation are sufficiently specific to communicate what was done and its connection
to the case.

### c.    Excessive Billing

Unum argues that Wessberg's counsel's requested hours are excessive regarding
three matters: 315 hours spent on research, the amount of time spent drafting the
pleadings and motions and preparing routine documents, and overlawyering the case.
The Court will take each challenge in turn.

### i.    Research

Unum argues that expending 315 hours on research was excessive given
Wessberg's counsel's stated level of experience and the nature of this case and requests
a 150-hour reduction of Wright's time. "Counsel for the prevailing party should make a

good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Nearly all of the time entries logging research hours specified the research that was conducted, and the topics were relevant to this litigation, including the standard of review and availability of discovery, expanding the administrative record, general ERISA research, general practice and procedure, policy-specific research, and Unum-specific research. Unum repeats arguments regarding the amount of time counsel spent researching for the unsuccessful Motions to Expand the Administrative Record and to Compel Discovery. Yet the Court has already determined that it will apply a 50% reduction in the fees associated with hours spent on unsuccessful motions and arguments and declines to further reduce the fee award based on the same issues. It is notable that Unum is arguing, on the one hand, that Wessberg's counsel's hourly rates should be reduced because they are not very experienced in ERISA litigation cases of this type and, on the other hand, that Wessberg's counsel spent too much time researching in this case. Given the complexity of this litigation, the Court finds that no reduction based on time spent on research is warranted.

### ii.    Drafting and Preparing Pleadings and Motions

Unum argues that the time spent drafting pleadings and motions and preparing routine documents was excessive and requests a forty-five percent reduction. In particular, Unum challenges that Wessberg's counsel spent 17.3 hours drafting the pleadings; 13.6 hours on the Rule 26(f) conference, report and initial disclosures; 46.8

hours on settlement communications and the settlement conference; 34 hours drafting the Motions to Expand the Administrative Record and Compel Discovery; 438 hours drafting, preparing, and arguing the Motions for Judgment on the Administrative Record; and 112.65 hours on post-order activities, like calculating benefits owed and prejudgment interest and preparing Wessberg's materials in support of her requests for attorney's fees and costs.

Everything considered, the Court finds that the amount of time spent on these matters was not unreasonable to the point of warranting a forty-five percent reduction. This case was very fact-intensive and involved complicated medical diagnoses and expert opinions, and the administrative record totaled 4,860 pages. Wessberg's counsel has provided a very detailed explanation as to how and why all of the claimed hours were expended. (Wright Decl. ¶¶ 37–69.) Nonetheless, the Court agrees that counsel claims quite a large number of hours for tasks that likely could and should have taken less time. In particular, the number of hours spent drafting routine Rule 26(f) materials and handling settlement discussions are slightly elevated. *See Nelson v. Metro. Life Ins. Co.*, No. 07-2326, 2010 WL 153040, at *10–11 (D. Minn. Jan. 11, 2010) (finding 31 hours to prepare for and attend settlement conference to be unreasonable). And while the Court notes the complicated nature of this case, the 438 hours spent preparing and arguing the Motions for Judgment on the Administrative Record and 112.65 hours spent on post-order activities are elevated as well. *See Christoff v. Unum Life Ins. Co. of Am.*, No. 17-

-14-

3512, 2019 WL 6715067, at *1 (D. Minn. Dec. 10, 2019) (noting that three attorneys performed 489 hours of work in ERISA case); *Werb v. ReliaStar Ins. Co.*, No. 13-669, 2014 WL 5431585, at *3 (D. Minn. Oct. 27, 2014) (noting that three attorneys spent 421.65 hours litigating ERISA case). Accordingly, the Court will apply a fifteen percent reduction to the total fee award to account for excessive and duplicative time spent on these matters.

### iii.    Overlawyering

Unum argues that the use of multiple attorneys and law firms created redundant, excessive, and unreasonable fees. While there is no per se rule prohibiting a litigant from having more than one attorney work on his case, "overlawyering" may be subject to a reduction in fees by the trial court. *Kline v. City of Kansas City, Mo., Fire Dep't*, 245 F.3d 707, 709 (8th Cir. 2001); *see also A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995) (allowing a court to reduce attorney hours and fees "for inefficiency or duplication of services in cases where more than one attorney is used"). A prevailing party's award of attorney's fees should take all attorneys' contribution into consideration to the extent "that the time reported does not reflect duplication of effort or work that would be performed by nonlawyers." *Kierst*, 56 F.3d at 863–64 (quoting *Reynolds v. Coomey*, 567 F.2d 1166, 1167 (1st Cir. 1978)).

The Court finds that it was not inherently unreasonable to have three attorneys staff this case. What's more, Wessberg's counsel purposely had Wright litigate the vast majority of this case herself, including tackling the most time-consuming tasks, as she was

billing at the lowest rate.  (Wright Decl. ¶ 25; Daniels Decl. ¶ 3.)  Furthermore, from May 3, 2024, onward, Wright's billing rate decreased to $200 per hour to reflect the fact that she had left her previous firm and had lower overhead costs.  (Wright Decl. ¶ 36.)  Such billing strategy demonstrates billing judgment regarding the multiple attorneys staffing this case.

Furthermore, the Court disagrees that the communications between Wright, Rothman, Daniels, and their paralegals were inefficient.  The counsel seek compensation for about 50 internal conferences and communications, primarily between Wright and Rothman, which total approximately 37.5 hours.  While Daniels was also part of some of those discussions, he did not typically charge for participating in the conferences and reviewing email communications.  (Wright Decl. ¶ 70.)  The Court fails to see how 37.5 hours of communications between two attorneys over a two-and-a-half-year litigation is unreasonable.  The Court thus declines to apply a reduction for any excessive billing related to any apparent overlawyering of this case.

### d.    Administrative Work

Finally, Unum argues that Wessberg's counsel improperly seek fees for hours spent on administrative and clerical tasks that should have been delegated to non-attorney staff or billed at rates for such staff.  In particular, Unum claims that the hours spent reviewing the administrative record and preparing the outline/summary thereof should have been delegated to non-attorney staff.  Unum calculates that a paralegal spent 20.9 hours reviewing and summarizing the administrative record, and that Wright additionally spent

47.9 hours doing the same. Further, Unum argues that Wessberg's counsel billed 16 hours for various administrative and/or clerical tasks related to service and filing, reviewing and finalizing routine documents, reviewing court docket entries, corresponding with chambers, updating scheduling and calendars, ordering a hearing transcript, and monitoring emails.[5]

The District of Minnesota has repeatedly indicated that routine clerical tasks cannot be accounted for at an attorney's, or even a paralegal's, billing rate. *See Rosen v. Wentworth*, 13 F. Supp. 3d 944, 952–53 (D. Minn. 2014) (collecting cases). The Court declines to apply any reduction for review of the administrative record given the complexity and length of the record in this case and the necessity for Wessberg's counsel to familiarize themselves with that record in order to build her case. That said, the Court will apply a paralegal rate of $185 to the 16 hours billed for administrative and/or clerical tasks. This results in a reduction of $4,005 of the fees related to Rothman's services and a reduction of $1,647.50 of the fees related to PDK's services, for a total reduction of $5,652.50 from the fee award.

In summary, the Court finds that Wright's and Daniels's rates of $390 and $475 per hour, respectively, are reasonable and will apply those rates to their hours. The Court finds that Rothman's various rates are slightly elevated and will apply a rate of $550 per

---

[5] Unum contends that Rothman billed 9 of those hours at $630 per hour, Daniels billed 2.5 of those hours at $475 per hour, and Wright billed 4.5 of those hours at $390 per hour. (Def.'s Mem. at 38.)

hour to his hours that were billed at and exceeding $585 per hour. The Court will apply a 50% reduction to the hours spent on the unsuccessful Motions to Expand the Administrative Record and to Compel Discovery and attempt to procure a bench trial. The Court finds that no reduction is warranted for any block-billing, time spent on research, or overlawyering of the case. Finally, the Court will reduce the rate for the 16 hours billed for administrative and/or clerical tasks to $185 per hour. These reductions bring the initial calculation of attorney's fees to $369,929.75. However, the Court will then apply a fifteen percent reduction to the total fee award to account for excessive and duplicative time spent on drafting and preparing the pleadings and motions, resulting in a final attorney's fees award of $314,440.29.[6]

### B.    Costs

Wessberg seeks $9,797.09 in costs, which Unum argues should be reduced to $430 to account solely for the court filing fee ($402) and copying charges ($28). Unum challenges Wessberg's fee request on four grounds. The Court will take each in turn.

First, Unum argues that Wessberg's counsel cannot recover the $2,158.18 in costs incurred for computer-aided research fees from Westlaw/LexisNexis and PACER. *See Leftwich v. Harris-Stowe State Coll.*, 702 F.2d 686, 695 (8th Cir. 1983). Though *Leftwich*

---

[6] Based on the Court's calculations, Wright is entitled to $203,204.40 in fees ($193,922.40 for PDK fees and $9,282.00 for fees accrued after May 3, 2024); Daniels is entitled to $8,044.19 in fees; Rothman is entitled to $88,490.95 in fees; and PDK is entitled to $10,818.80 and $3,881.95 in fees for paralegals Siegel and Rice, respectively.

has since been abrogated, the Eighth Circuit has held that "if the prevailing party demonstrates that separately billing for CLR is the 'prevailing practice in a given community' and that such fees are reasonable, the district court may award those costs." *Hernandez v. Bridgestone Ams. Tire Operations, LLC*, 831 F.3d 940, 950 (8th Cir. 2016) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989)); *see also Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 432 (8th Cir. 2017). Here, courts in this District have not permitted costs associated with legal research to be recovered in addition to attorney's fees. *See United States v. Bayer Corp.*, No. 08-5758, 2024 WL 1421081, at *16 (D. Minn. Jan. 25, 2024); *Nesse v. Green Nature-Cycle, LLC*, No. 18-636, 2020 WL 2848193, at *5 (D. Minn. June 2, 2020). And Wessberg has not demonstrated that separately billing for computer-aided legal research fees is the prevailing practice. In fact, Rothman excluded costs for Lexis legal research from his costs. (Rothman Decl. ¶ 41.) Accordingly, the Court will exclude the $2,158.18 in costs that Wessberg's counsel seeks for computer-aided research fees from Westlaw/LexisNexis and PACER.

Second, Unum argues that Wessberg's counsel cannot recover the $2,268.15 in costs incurred in relation to the unsuccessful Motions to Expand the Administrative Record and Compel Discovery, including costs to obtain the transcript from the hearing on the motions and to obtain updated medical records and expert consultation. However, the Court has already decided to reduce Wessberg's attorney's fees based on these unsuccessful motions, and the Court declines to apply further reductions here.

-19-

Third, Unum argues that Wessberg's counsel cannot recover the $132.61 in costs for postage expenses, courier service, and parking expenses.  Such expenses are not recoverable costs.  *Lundgren v. Country Life Ins. Co.*, No. 20-2467, 2021 WL 4705186, at *6 (D. Minn. Oct. 8, 2021) (rejecting costs for postage and delivery costs); *see also Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 527 (8th Cir. 2020) ("[C]osts awarded under ERISA are limited to expenses in 28 U.S.C. § 1821 and § 1920.").  The Court will therefore exclude these costs.

Finally, Unum argues that Wessberg's counsel is not entitled to costs associated with one gigabyte of data storage at $250 per month, which totals $4,807.15.  Given the size of the administrative record at 4,359 pages, the Court agrees that such costs should be excluded as Wessberg's counsel has not provided any explanation as to why so much storage space was reasonable or necessary for this case.  *See Webasto Thermo & Comfort N. Am., Inc.*, 326 F.R.D. 465, 467 n.3 (E.D. Mich. June 29, 2018) ("One gigabyte would comprise approximately 678,000 pages of text.").

Based on the above, the Court finds that Wessberg's recoverable costs are limited to $2,698.15.

## CONCLUSION

The Court will order Unum to pay Wessberg retroactive benefits owed in the amount of $663,234.14 and prejudgment interest in the amount of $77,851.17, for a total amount owed of $741,085.31.  The Court will also order Unum to pay Wessberg attorney's fees in the amount of $314,440.29 and costs in the amount of $2,698.15.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff shall recover from Defendant retroactive benefits owed in the amount of $663,234.14 and prejudgment interest in the amount of $77,851.17, for a total of $741,085.31.

2.  Plaintiff shall recover from Defendant attorney's fees in the amount of $314,440.29.

3.  Plaintiff shall recover from Defendant costs in the amount of $2,698.15.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  September 11, 2025                              s/John R. Tunheim
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                        United States District Judge